Argued July 8, affirmed October 24, 1974

# MANDAL, *Appellant, v.* HOFFMAN CONSTRUCTION COMPANY, *Respondent.*

527 P2d 387

*Robert L. Engle* of Eichsteadt, Bolland & Engle, Woodburn, argued the cause and filed briefs for appellant.

*Kenneth D. Renner* of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE,* HOLMAN, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is an action to recover damages suffered by plaintiff in carrying out his contract with the city of Salem as a result of the negligent conduct of defendant in failing to perform its contract with the city. Defendant's demurrer was sustained and plaintiff appeals.

This litigation arises out of the construction of the Salem Civic Center. The complaint, in substance recited the following. Plaintiff contracted with Landscaping, Inc., to do the landscaping work which Landscaping, Inc. had contracted to do for the city. Defendant was hired directly by the city to do site development work. Included in these duties was the obligation to place upon the site fertile soil, free of noxious weeds. Defendant was required to submit a sample of the soil to the city's architect for approval. Defendant was also obligated to place the topsoil to proper subgrade and compaction for planting of trees. Plaintiff, by contract, was given 89 days in which to landscape after defendant completed its tasks. However, allegedly because defendant was negligent in the performance of its duties in failing to submit soil sam-

---

* Denecke, J., did not participate in this decision.

ples to the city's architect, in failing to deposit weed-free soil on the site, and in failing to prepare proper subgrade and compaction for planting, plaintiff was unable to complete his work within the prescribed time. Plaintiff claims as damages as a result of the delay the additional expenses such as wages, insurance premiums, and profits lost from other jobs he would have been able to perform had he been able to complete the project on time. It is this amount, plus recovery for "mental anguish" which plaintiff seeks to recover.

Plaintiff does not contend that defendant owes any kind of a contractual duty to him. His theory is that defendant's duties under its contract, "coupled with the realization that the failure to carry out the terms of the contract, will cause substantial harm to plaintiff, raises a duty at law to proceed under the contract." Plaintiff advances as "an even stronger reason," the fact that this court has repudiated "the older doctrine that the lack of privity of contract between the contractor and the third person bars responsibility of the contractor to the third person" (quoting from *Strandholm v. General Construction Co.*, 235 Or 145, 157, 382 P2d 843 (1963)).

The removal of the privity obstacle does not establish defendant's liability in the present case because even if privity is no obstacle to recovery, there still remains the question of whether defendant owes a duty to plaintiff resting in tort.[1]

■ If defendant had delayed the performance of its contract with the city solely for the purpose of causing damages to plaintiff, its conduct would be tortious as

---

[1] It is immaterial whether we treat the present case as an instance of interference with contractual relations or interference with prospective economic advantage.

to plaintiff, although incidentally it would arise out of the contract and would also render defendant liable to the city for breach of contract.[2] The imposition of tort liability in such circumstances would rest upon the need to interdict reprehensible conduct which does not comport with the moral sense of the community.[3]

There are cases which have held defendant liable where he has not intended to harm the plaintiff but has made a conscious choice not to perform and "has merely pursued his own ends, knowing that his conduct is certain, or substantially so, to prevent performance of the contract, but without any desire or primary object of doing so."[4] Among these cases are situations, as in the present case, in which defendant has broken his own contract upon which plaintiff's contract depends.[5]

It is not necessary for us to decide whether we would adopt such a rule because the complaint does not

---

[2] Phez Co. v. Salem Fruit Union, 103 Or 514, 551, 201 P 222, 205 P 970 (1922); Unity Sheet Metal Works, Inc. v. Farrell Lines, Inc., 101 NYS2d 1000 (Sup Ct 1950). Restatement of Torts § 766, comment c (1939); 1 Harper and James, Law of Torts § 6.11 at 513 (1956); Prosser, Law of Torts (4th ed 1971) 934-936.

[3] "Everyone has the right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit * * *. [H]e has a right to be free from malicious and wanton interference, disturbance and annoyance. If the disturbance or loss comes as a result of competition or the exercise of like rights by others, it is *damnum abseque injuria*, unless some superior right by contract or otherwise is interfered with. But if it comes from the merely wanton and malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing." Walker v. Cronin, 107 Mass 555, 564 (1871).

[4] Prosser, Law of Torts (4th ed 1971), 941.

[5] Cavender v. Waddingham, 2 Mo App 551 (1876); Livermore v. Crane, 26 Wash 529, 67 P 221 (1901). Cf., Alijassim v. S.S. South Star, 323 F Supp 918 (S.D. NY 1971); Phez Co. v. Salem Fruit Union, *supra* note 2.

allege that defendant pursued a course of conduct knowing that his conduct was substantially certain to cause plaintiff harm. Although the complaint alleges that defendant "was well aware of the terms of said contract and the reasonable time for completion," it goes on to allege only that defendant "was negligent in the performance and non-performance of its duties under its contract with the city of Salem in the following particulars:

"1. In failing to prepare the project slopes to proper subgrade and compaction for planting in a timely manner and with reasonable diligence.

"2. In failing to use reasonable care to deposit weed free topsoil upon planting surfaces.

"3. In failing to use reasonable care to submit soil samples and obtain architect's approval prior to hauling topsoil to site."

These allegations do not purport to charge that defendant knew its failure to act would cause harm to plaintiff. Nor do they even purport to say that defendant knew of alternatives which would affect plaintiff differently. The conduct recited as constituting negligence could consist of a failure to hire adequately trained workmen, or failure properly to inspect the topsoil for weeds before depositing it, or other similar careless activities constituting a breach of defendant's contract with the city of Salem.

■ The question is whether non-intentional conduct of this nature will constitute a breach of duty, within the framework of the law of torts, to a person in the position of plaintiff in this case. We hold that there is

no such duty where the only negligence charged is the failure to perform a contract with a third party.[5]

We have tried to make a careful analysis of the cases in which it is contended that the defendant's "non-feasance" in the performance of his contractual duties to his promisee has resulted in damage to the plaintiff through the interference with his contractual relations, or by inflicting upon him economic loss in some other way. In most of these cases recovery has been denied. It has been suggested by eminent authority that this result can be explained on the ground "that the courts are deliberately refusing to protect any contract against negligence, influenced by fear of an undue burden upon freedom of action, the relative severity of the penalty which may be imposed upon mere negligence, the possibility of collusive claims and increased litigation, and the difficulty of apportioning damages."[7] It is further observed that this policy may be "too narrow."[8]

Although there may be grounds for taking a broader view in some of the cases where harm flows from the non-performance of contract, we do not think that the present case calls for such treatment. There is no way to express a concrete formula establishing

[5] We do not see this as a case in which a negligent defendant may have a duty to others than the promisee but is not liable where he can show privilege or justification. *Cf.*, Prosser, Law of Torts (4th ed 1971) 942-946; 1 Harper and James, Law of Torts § 6.12 (1956). *See* Byrd v. English, 117 Ga 191 (1902); Anthony v. Slaid, 11 Metc 290, 52 Mass 290 (1846); Fifield Manor v. Finston, 54 Cal2d 632, 7 Cal Rptr 377, 354 P2d 1073 (1960); Note, Liability for Negligent Interference with Contract Relations, 23 Cal L Rev 420 (1935).

[7] Prosser, Law of Torts (4th ed 1971) 940.

[8] *Ibid. See also,* Carpenter, Interference with Contractual Relations, 41 Harv L Rev 728, 737-742 (1928); 7 Or L Rev 181, 301 (1928).

the point at which the non-performance of a contract will also generate tort liability to third persons. The most that the courts can do is to identify the factors which are relevant to the solution. Several of these factors have been alluded to above, among which are the undue impediment of freedom of action of the promissor, the relative severity of the penalty which may be imposed upon mere negligence, and the danger of increased litigation.

In the present case the crucial consideration is whether, in the relation of one contractor to another in the construction world, it can be said that there exists a reasonable expectation that each will exercise care in the performance of his contract to avoid interference with the performance of the other. Speaking of this interest in reasonable expectations of economic advantage, it has been said that it "of course, involves society's interest in affording to the individual a fair opportunity to conduct his legitimate business affairs without interruption from others except in so far as such interferences are sanctioned by the 'rules of the game' which society has adopted."[9]

We have no empirical data which throws light upon the so-called "rules of the game" as understood by those who have entered into interdependent building contracts and so we must, as we ordinarily do when called upon to decide the limits of liability, make our own appraisal of what are deemed to be the accepted practices and attitudes in the community.[10]

It is our opinion that contractors in this type of relationship would not feel that under the "rules of

[9] 1 Harper and James, Law of Torts § 6.11 p. 510 (1956).

[10] Cf., Stewart v. Jefferson Plywood Co., 255 Or 603, 469 P2d 783 (1970).

the game" they would be liable to other contractors for non-feasance in discharging their obligation under the contract or, on the other hand, that they would be entitled to recover for the non-feasance of other contractors on the job. We think that each would enter into his contract with the knowledge that the causes of delay are manifold and common and would assume the risk of such delay.

There are reasons for limiting the promissor's liability apart from the understanding of those within or outside the trade as to what constitutes compensable fault. The dependence of each contractor's performance upon the performance of others on the same job presents a problem of limiting the reach of liability if once opened. And even if we were to recognize the existence of a duty in the circumstances of this case, we would eventually be faced with the problem of finding a stopping point for liability where the defendant contractor's delay interfered with the economic interests of others who were not involved as one of the contractors in the construction project.

Finally, we think it is important to note that contractors in the position of plaintiff can, by making provision with those with whom they are contracting, require the owner to respond in damages for delays by other contractors on the same job. It is possible that contractual remedies against the other contractors involved in the same enterprise could also be devised. In our opinion, the parties' negotiated allocation by contract of the risks of loss incident to the performance of others is preferable to a less flexible court-imposed tort duty cast in terms of negligence with all of the attendant complexities noted above.

The judgment of the trial court is affirmed.